IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Walter L. HARVEY, Attorney at Law.†

Supreme Court

*No. 93–3110–D. Submitted on briefs October 6,
1995.—Decided November 14, 1995.*

(Also reported in 539 N.W.2d 453.)

†Motion for Reconsideration denied January 17, 1996.

For Walter L. Harvey there were briefs by *E. Campion Kersten, James P. Gerlach, Thomas D. Bell* and *Kersten & McKinnon, S.C.*, Milwaukee, *LaRowe, Gerlach & Roy, S.C.*, Reedsburg and *Doar, Drill & Skow, S.C.*, New Richmond.

For the Board of Attorneys Professional Responsibility there was a brief by *Thomas J. Basting, Sr.*, and *Brennan, Steil, Basting & MacDougall, S.C.*, Janesville.

PER CURIAM. Attorney Walter L. Harvey appealed from the referee's conclusion that he engaged in conduct involving dishonesty, deceit and misrepresentation by using a power of attorney given to him by an elderly relative to convert to his own use more than $140,000 of the relative's assets, conversions that were not intended, known, authorized or ratified by her. Attorney Harvey also appealed from the referee's recommendation that his license to practice law in Wisconsin be revoked as discipline for that misconduct.

We determine that the referee properly concluded that Attorney Harvey engaged in dishonesty, deceit and misrepresentation in this matter, as that conclusion is supported by facts based on testimony and documentary evidence presented at a lengthy disciplinary hearing. Attorney Harvey has failed to establish that the facts found by the referee that support the conclusion regarding his misconduct are clearly erroneous.

We further determine that the recommended license revocation is the appropriate discipline to impose for Attorney Harvey's misconduct. He abused the fiduciary position he assumed on behalf of his relative for his own financial benefit and violated the trust she had placed in him to act in her best interests. The

egregious nature and extent of his misconduct renders Attorney Harvey unfit to be licensed by this court to represent others in the legal system.

Attorney Harvey was admitted to practice law in Wisconsin in 1962 and practiced in Madison. In 1987, he relocated to Arizona, where he currently resides. He has not been the subject of a prior disciplinary proceeding. The facts found by the referee, Attorney Jean DiMotto, concern Attorney Harvey's use of a power of attorney to take more than $140,000 of a relative's assets during the six months preceding her death.

From 1959 to 1987, Attorney Harvey developed and maintained a close relationship with Elyda Morphy, a first cousin of his mother. Ms. Morphy, the widow of the former director of the University of Wisconsin band, executed a will in 1968 in which she made two specific bequests — $1000 to a church and $25,000 to Attorney Harvey — and gave the residue of her estate to the University of Wisconsin Foundation to establish a fund in her late husband's name to provide scholarships to University of Wisconsin music students. Her will named First Wisconsin National Bank as personal representative and a codicil she executed in 1976 did not substantially alter the disposition of her estate.

In December, 1980, Ms. Morphy, then 85 years old, entered a nursing home and let Attorney Harvey and his wife and daughter have whatever furniture and personal possessions she did not take with her. The nursing home required a guaranty of all expenses she might incur and Attorney Harvey signed as guarantor, but throughout her nine-year residence there, Ms. Morphy paid all of those expenses. Nursing home staff described Ms. Morphy as very intelligent, independent, careful with her assets and income, and private and

precise, particularly in respect to her financial matters. Three months after entering the nursing home, Ms. Morphy had her personal attorney, Myron Stevens, prepare and she executed a power of attorney appointing Walter Harvey her attorney in fact, a power Attorney Harvey never used.

In 1984, Attorney Stevens discussed with Ms. Morphy who should have charge of her estate in the event she became incapacitated and she specified the bank she had named personal representative in her will. Attorney Stevens then suggested that her attorney in fact be given specific authorization to create a revocable living trust for her in the event of her incapacity, and he drafted such a provision in a new, durable power of attorney naming Attorney Harvey, which Ms. Morphy executed in March, 1984. Attorney Stevens sent Attorney Harvey a copy of that new power, indicating to him the purpose for it. Attorney Harvey never used that power.

Ms. Morphy executed a third power of attorney in March, 1987, on the advice of her attorney when she told him she had discarded the 1984 power. Her attorney advised her that she needed a power of attorney in force so that if she ever became incapacitated, Attorney Harvey could enter into a living trust for her with the bank. The 1987 power did not differ substantially from its predecessor.

At the same time he advised her to execute a new power of attorney, Attorney Stevens suggested that Ms. Morphy execute a codicil to her will specifically giving her furniture and furnishings, personal effects and remaining tangible personal property to Attorney Harvey and he drafted a codicil to accomplish that. Ms. Morphy declined to execute that codicil because she believed it was unnecessary, as she already had made

arrangements with Attorney Harvey to dispose of those items. Attorney Stevens then sent the new power of attorney to Attorney Harvey, explaining the reason for it in a cover letter. He also sent him a copy of the unexecuted codicil and set forth his reason for advising Ms. Morphy to sign it and her reason for not doing so.

Over the following two years, Attorney Harvey did not visit Ms. Morphy and did not use the power of attorney. When he learned in mid-February, 1989, from a social worker at the nursing home that Ms. Morphy's physical condition had deteriorated, Attorney Harvey telephoned Attorney Stevens, who told him the 1987 power of attorney remained in effect, First Wisconsin National Bank continued to be the executor named in Ms. Morphy's will and the bequests to himself and to the University of Wisconsin Foundation remained unchanged. The following month, Attorney Harvey and his wife visited Ms. Morphy and during that visit, Ms. Morphy told him words to the effect, "There is plenty in there for you and [your wife]. Go on and use it." The referee found that Ms. Morphy's statement referred to the specific bequest to him in her will, not to her funds while she was alive.

Shortly after that visit, Attorney Harvey met with Attorney Stevens and discussed using the power of attorney to obtain bank authorization for him to sign checks on Ms. Morphy's accounts and to gain access to her safe deposit box. He also discussed making funeral arrangements, locating Ms. Morphy's heirs and arranging for the nursing home to dispose of her personal possessions. The referee found that Attorney Harvey did not discuss his being appointed personal representative of Ms. Morphy's estate and Attorney Stevens its attorney.

Immediately following that meeting, Attorney Harvey had his name added on Ms. Morphy's savings and checking accounts, inventoried the contents of her safe deposit box and moved them to a new box in the name of himself and his wife. A few days later he requested and received from Attorney Stevens a copy of Ms. Morphy's tax returns for the preceding three years, which listed her annuities, stocks and certificates of deposit and her earnings from them.

Attorney Harvey first used Ms. Morphy's power of attorney on March 29, 1989, to liquidate her money market account at an investment company. Following his return to Arizona, he received a check from the company payable to Ms. Morphy and himself as her attorney in fact in the amount of $34,866.96. He cashed that check and used the proceeds for personal purposes.

Attorney Harvey again visited Ms. Morphy in late April, 1989, as her condition had worsened. She was for the most part bedridden and described as forgetful and occasionally confused. Following that visit and over the next six months, Attorney Harvey used the power of attorney on eight occasions to obtain Ms. Morphy's funds, which he used for his own purposes. He made five withdrawals from her savings account, in the total amount of $73,500; he redeemed two certificates of deposit, with a total value of $10,374; he had some of her stock sold, for which he received $21,404. The referee found that Ms. Morphy was not aware of those transfers of her assets Attorney Harvey had made to himself.

Contrary to Attorney Harvey's contention that the bank statements for Ms. Morphy's savings account and the statement reporting the liquidation of her money market account informed her of what he termed the

"gifts" he was making to himself, the referee found no evidence to establish that those statements identified the savings account withdrawals by cashier's check payable to Attorney Harvey as attorney in fact or that Ms. Morphy in fact saw the money market account liquidation statement. The referee also found no evidence that the cashing of the certificates of deposit was reported to Ms. Morphy and also found that she did not know of the stock sale.

Attorney Harvey received most of Ms. Morphy's funds by check payable to himself as her attorney in fact. He testified that he used the $140,145 for down payments and installments on two automobiles, payments on a leased home, furniture purchases, moving expenses and a temporary residence, law practice expenses, miscellaneous living expenses and his daughter's university tuition.

During that six-month period, Attorney Harvey wrote to Ms. Morphy occasionally and telephoned the nursing home several times to inquire about her condition. He spoke to nursing home staff, as Ms. Morphy was unable to converse on the telephone.

In early September, 1989, Ms. Morphy told the social worker who had been attending to her at the nursing home that she was concerned that the balance in her savings account reported on a recent bank statement was $6000 lower than it should have been. At Ms. Morphy's request, the social worker made an inquiry at the bank and it sent Ms. Morphy an authorization for her to sign requesting information concerning the account and documentation of the disbursements from it. The bank sent a copy of that communication to Attorney Harvey as Ms. Morphy's attorney in fact. Upon receiving that copy, Attorney Harvey called the social worker and asked her to assure Ms. Morphy that

127

her money "was fine" and said that she had $75,000 to $80,000 in her savings account. The notes the social worker wrote in Ms. Morphy's record reported that Attorney Harvey said he had taken some of the funds from the savings account "to invest it more wisely for a larger return on [Ms. Morphy's] behalf."

In response to her inquiry, the bank informed Ms. Morphy by letter dated Friday, September 29, 1989, of the amounts and dates of deposits to and withdrawals from her savings account and included copies of the cashier's checks it had issued to Attorney Harvey as her attorney in fact. The referee found that Ms. Morphy neither saw nor read that correspondence prior to her death, which occurred in the early hours of the following Monday, October 2, 1989.

Shortly after Ms. Morphy's funeral, Attorney Harvey met with Attorney Stevens and insisted that he be appointed personal representative of her estate. At that time, Attorney Stevens already was acting as attorney for the estate on behalf of the named personal representative and he agreed to petition the court for Attorney Harvey's appointment.

The University of Wisconsin Foundation was notified of Ms. Morphy's death and of the provision in her will making it her residual beneficiary. An official of the Foundation testified that during a three-way telephone conversation with Attorney Stevens and Attorney Harvey, he learned that Attorney Harvey, then living in California, was a beneficiary under Ms. Morphy's will and was seeking appointment to replace the bank as personal representative. The official also was told that Attorney Harvey had been Ms. Morphy's attorney in fact under a power of attorney.

When asked to consent on behalf of the Foundation to Attorney Harvey's being personal representative of

the estate, the official questioned whether additional costs would result from his residing in California while the estate was being probated in Wisconsin. He also asked whether Attorney Harvey had used Ms. Morphy's power of attorney, as he was concerned that as personal representative, Attorney Harvey would be reviewing his own prior actions as attorney in fact. The official wrote to Attorney Stevens on October 12, 1989 that, based on assurances he had been given that administration expenses would not substantially increase and that Attorney Harvey had not used the power of attorney, the Foundation did not object to Attorney Harvey's appointment as personal representative.

When several weeks passed and Attorney Harvey had not provided information needed to commence estate administration, Attorney Stevens wrote to him expressing concern. The Foundation official received a copy of that letter and wrote to Attorney Stevens of his concern with the delay and reiterated that the Foundation's agreement not to object to Attorney Harvey's appointment as personal representative was premised on Attorney Harvey's assertions that he had not acted under the power of attorney and that his appointment would not substantially increase probate expenses.

After Attorney Harvey was appointed personal representative, Attorney Stevens asked him for information concerning the estate's inventory. On March 21, 1990, Attorney Harvey sent him stock certificates that had been in the safe deposit box and stated that Ms. Morphy had asked him "to accept substantial funds from her estate as a gift" and that in 1989 she "provided" him specified amounts from stocks, savings, certificates of deposit and a money market account. Attorney Harvey did not disclose in that letter that he

had obtained those funds by using the power of attorney. Prior to receiving that letter, Attorney Stevens had no knowledge of any "gifts" from Ms. Morphy to Attorney Harvey.

The referee found that Ms. Morphy did not intend to make a gift to Attorney Harvey of her funds while she was alive, rejecting as non-genuine three documents he offered to support his contention that she intended to do so. The first of those documents is a photocopy of a typewritten note purportedly prepared and signed by Ms. Morphy and dated February 15, 1981, shortly after her move to the nursing home. The note thanked Attorney Harvey for taking care of Ms. Morphy for the past 15 years and for moving her and guaranteeing her obligations to the nursing home. It states, in part, "I want you to have whatever is left of my possessions and accounts when the time comes, if any. If I outlast my accounts, then you must see me through. I will have [Attorney] Stevens prepare a legal document so you will have authority to take care of me and handle these matters." Attorney Stevens drafted the first power of attorney and she executed it the following month.

The second document the referee found non-genuine is a photocopy of a note dated March 7, 1987 that Attorney Harvey claimed to have written at the direction of Ms. Morphy. It is purportedly signed by her and states, "Walter, you should take whatever you want of my funds for you, [your wife and daughter]. You have taken care of me for so long — Just be sure [the nursing home] is paid, there is something left for scholarships and you handle my affairs afterward —."

The referee based her rejection of those documents as evidence of Ms. Morphy's intent to make a gift to Attorney Harvey on the following: the originals alleg-

edly were never found and not produced and were not with the originals of Ms. Morphy's other documents at the nursing home; no one other than Attorney Harvey saw Ms. Morphy sign the originals; the proffered copies were in Attorney Harvey's possession but he did not produce them in 1990 when Attorney Stevens expressed concern about the lack of corroboration for the gifts Attorney Harvey claimed Ms. Morphy had made to him. Based on that evidence, the referee found that the two documents were non-genuine, had not been signed by Ms. Morphy and were not evidence of any donative intent, testamentary or otherwise, of Ms. Morphy in respect to Attorney Harvey.

The referee further noted that none of the three powers of attorney Ms. Morphy gave Attorney Harvey specifically authorized gifting, whether to the holder of the power or to anyone else. Attorney Harvey took the position that, based on the 1981 note, the purpose of those powers was gifting. To the contrary, the referee found, the reason for the power Attorney Stevens repeatedly gave Attorney Harvey in notes and correspondence was to provide for the management of Ms. Morphy's affairs in the event she became incapacitated. Moreover, the reason he communicated to Attorney Harvey for Ms. Morphy's not having executed the codicil he prepared regarding the disposition of her personal effects was that Attorney Harvey was not to receive those by bequest but was to dispose of them after her death.

The third document rejected by the referee as evidence of Ms. Morphy's donative intent was an original, handwritten page asserted to have been prepared initially by Ms. Morphy listing questions and comments about matters she wanted to discuss with Attorney Harvey when he visited her in March, 1987. The top

half of the list, apparently in Ms. Morphy's handwriting, makes reference to the nursing home's telephoning Attorney Harvey upon Ms. Morphy's death and his taking charge of funeral and burial arrangements and it specifies First Wisconsin National Bank as her "executor," questioning whether the bank would remove her furniture and personal effects. Attorney Harvey testified that while he was discussing those matters with her, Ms. Morphy experienced difficulty writing and he took the pencil from her and added items to the list pursuant to their conversation.

The first three of those additional items, written in all capital letters, relate to funeral and burial arrangements and Attorney Harvey's expenses in taking care of those matters and sets out his telephone number. The referee found that those three items had been written during Ms. Morphy's conversation with Attorney Harvey but found that Attorney Harvey added the fourth item subsequent to that conversation. That item states, "WALT AS PR & all Property + Accounts to Him." (Presumably, "PR" is an abbreviation of "personal representative.") The referee's findings that Attorney Harvey added that item subsequent to his discussion with Ms. Morphy and that it does not authentically reflect her wishes in respect to who was to be the personal representative of her estate and regarding the disposition of her property are based on the comparatively lighter pencil impressions of the fourth item and its different capitalization pattern compared to that of the first three items.

After he received Attorney Harvey's letter of March 21, 1990 informing him of the "gifts" of Ms. Morphy's funds, Attorney Stevens told Attorney Harvey that as attorney for the estate, he would have to advise the Foundation of those gifts. Attorney Harvey

132

agreed that Attorney Stevens would send the Foundation a copy of that letter listing those gifts. At the same time, Attorney Harvey asked Attorney Stevens to file gift tax returns for the $140,000 he had taken from Ms. Morphy's assets but Attorney Stevens declined because he felt in good conscience he could not do so.

When the Foundation received a copy of Attorney Harvey's letter disclosing the transfers of Ms. Morphy's assets to himself, it immediately retained counsel to determine whether those transfers were proper. Shortly thereafter, the Foundation demanded formal administration of the estate and the removal of Attorney Harvey as its personal representative. Attorney Harvey resigned as personal representative on June 5, 1990 and was replaced by another attorney.

One year later, Ms. Morphy's estate commenced an action against Attorney Harvey to recover the funds he had conveyed to himself under the power of attorney. Attorney Harvey entered into a settlement of that litigation under the terms of which he waived entitlement to the $25,000 specific bequest under Ms. Morphy's will and agreed to pay the estate $88,196.18, the first $40,000 of which by December 1, 1991 and the remainder by January 15, 1992. The settlement agreement provided that if those payments were not made timely, the estate would be entitled to immediate entry of judgment against Attorney Harvey for the full amount of the transfers. When Attorney Harvey did not make any payment, the estate took a judgment against him. It is asserted in this proceeding that Attorney Harvey has paid nothing toward satisfaction of that judgment, the estate remains open and no funds have been distributed to the Foundation.

Finding that Attorney Harvey's taking of Ms. Morphy's funds for his own use was not intended,

known, authorized or ratified by her, the referee concluded that Attorney Harvey's use of Ms. Morphy's power of attorney constituted conduct involving dishonesty, deceit and misrepresentation, in violation of 20:8.4(c).[1] As discipline for that misconduct, the referee recommended that Attorney Harvey's license to practice law be revoked. The referee rejected Attorney Harvey's position that because he has stated his intention never to practice law in Wisconsin again, the protection of the public does not require suspension or revocation of his license.

In recommending license revocation, the referee took into account not only the seriousness of Attorney Harvey's misconduct in respect to the amount of funds he converted but also his failure to acknowledge the seriousness of his wrongdoing. The referee also considered a number of aggravating factors, including the deliberate and methodical nature of his dishonesty and deceit, the fact that it occurred within a family context and victimized a relative very close to him, the brief period of time during which he converted her funds, his deceit to several persons to conceal his conduct, and his failure to make any restitution during the ensuing five years. In addition to license revocation, the referee recommended that Attorney Harvey be required to make restitution to Ms. Morphy's estate in the full amount of its judgment, including interest from the date of each of his conversions, and repay to the estate the gift tax paid for the "gifts" he reported to the tax authorities.

---

[1] SCR 20:8.4 provides, in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

In his appeal from the referee's findings, conclusions and recommendation, Attorney Harvey first argued that he was denied due process by the referee's findings that the two documents purportedly signed by Ms. Morphy were non-genuine and that a portion of his notes of their visit were added after the event. That argument has no merit. His contention that the Board of Attorneys Professional Responsibility (Board) never claimed those documents were not genuine is incorrect. The record discloses that on more than one occasion the Board questioned the absence of the originals of the documents and objected to the admissibility of one of them, in part because it was a copy and had not been verified and the location of the original was unknown. Also, the Board specifically asked Attorney Harvey whether he had written the last of the four items on Ms. Morphy's list at a later time. Moreover, it was Attorney Harvey who introduced the documents to support his position that his transfers of Ms. Morphy's money constituted gifts and the burden was on him to establish that they were genuine and evidenced Ms. Morphy's donative intent.

Attorney Harvey's contention that in finding the documents non-genuine the referee improperly considered physical evidence without the benefit of expert testimony or expertise of her own might have merit were it not for the referee's specific finding that those documents were not evidence of Ms. Morphy's donative intent, testamentary or otherwise. Accordingly, the findings of non-genuineness and post-event creation do not constitute an independent, necessary basis for the referee's conclusion in respect to Attorney Harvey's dishonesty, deceit and misrepresentation. Neither do they serve as the basis of a conclusion in respect to additional misconduct. At most, the referee considered his

offering of what she found to be non-genuine docu-. ments an aggravating factor in determining the discipline to be recommended. At all events, it is for this court to determine the appropriate discipline to impose for Attorney Harvey's misconduct.

Attorney Harvey next argued that the referee erred in finding that Ms. Morphy's alleged statement to him in March, 1989 encouraging him to use what she termed "plenty in there for you and [your wife]" referred not to her assets while she was alive but to the $25,000 specific bequest to him in her will. Contrary to Attorney Harvey's contention that the referee engaged in speculation and ignored the plain meaning of those words, the referee's finding is not clearly erroneous, as it is supported by the finding that the power of attorney Ms. Morphy had given to Attorney Harvey was not, as he claimed, intended primarily to enable him to make gifts to himself of her assets but to take care of her in the event she became incapacitated. Moreover, the statement attributed to Ms. Morphy is sufficiently ambiguous as to the time, the amount and the source of any purported gift to support the referee's finding.

Attorney Harvey's third argument is that the referee erred by refusing to address the issues of whether the power of attorney he held authorized him to make gifts and whether he reasonably could have interpreted it to do so. The referee stated that she did not reach those legal issues because the ultimate issue was whether Attorney Harvey breached his fiduciary duty by using the power of attorney in a manner inconsistent with the grantor's intentions and wishes. Thus, the referee's denial of Attorney Harvey's untimely motion to reopen the violation phase of the disciplinary hearing for the presentation of the testimony of two

attorneys on the extent of authority in the power of attorney was proper.

We also reject Attorney Harvey's argument that three of the referee's evidentiary rulings constituted error. First, he asserted that the transcript of the partial deposition of Attorney Stevens, which had not been completed at the time of his death, should not have been admitted. The referee properly determined that Attorney Harvey had a full opportunity to cross-examine Attorney Stevens on the matters addressed in the portion of the transcript she admitted.

Second, the referee did not err in refusing to permit Attorney Harvey's counsel to make an offer of proof concerning a statement attributed to Attorney Stevens, which the referee ruled inadmissible as double hearsay. There is no merit to Attorney Harvey's contention that the denial of the opportunity to make an offer of proof impermissibly infringed on his right to preserve for review what he believed was error. The referee properly determined that the nature of the evidence sought to be introduced had been identified sufficiently in the record for review of the ruling.

Third, the referee properly admitted the testimony of the successor personal representative regarding statements Attorney Stevens made to him during a conversation about the estate and Attorney Harvey's use of the power of attorney. The referee found applicable the exception to the inadmissibility of hearsay provided in Wis. Stat. § 908.045(6) (1993-94)[2] authorizing the admission of statements of an unavailable

---

[2] Wis. Stat. § 908.045 provides, in pertinent part:

**Hearsay exceptions; declarant unavailable.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

declarant that have circumstantial guarantees of trustworthiness comparable to those of the specific exceptions set forth in the statute.

Attorney Harvey also contended that several of the referee's findings of fact are clearly erroneous and, consequently, they and the conclusion based on them must be rejected. Attorney Harvey established only two "clear" errors in the referee's findings, neither of which is of any consequence to the referee's conclusion regarding his misconduct. The referee found that one stock sale had not been completed at the time of Ms. Morphy's death and that all of the distributions of her funds were made payable to Attorney Harvey as attorney in fact. The record, however, appears to establish that the stock transaction was completed prior to Ms. Morphy's death, although the payment of the funds extended beyond the date of death. Also, three of Attorney Harvey's five withdrawals of funds from Ms. Morphy's savings account were by check payable to him individually, not as her attorney in fact. Nevertheless, it is undisputed that Attorney Harvey used the power of attorney in each instance of his taking Ms. Morphy's funds.

The remainder of Attorney Harvey's arguments are without merit. In part, they address the referee's findings based on her assessment of the credibility of the witnesses. They also make unsupported assertions regarding the kind of misconduct the referee concluded he had engaged in and her findings in respect to the Board's having met its burden of proof.

On the basis of facts found by the referee and supported in the record, we adopt the referee's conclusion

(6) OTHER EXCEPTIONS. A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness.

138

that Attorney Harvey engaged in conduct involving dishonesty, deceit and misrepresentation by using Ms. Morphy's power of attorney to convert her funds to his own use. We determine that the license revocation recommended by the referee is appropriate discipline to impose for that misconduct. The fact that Attorney Harvey was not providing professional services to Ms. Morphy renders his misconduct no less egregious or reprehensible than an attorney's conversion of funds of clients or others in the course of a professional relationship. We reject Attorney Harvey's assertion, as did the referee, that in the event we determine that he has engaged in professional misconduct, a private or public reprimand should be imposed.

We do not impose the additional recommendations for disposition of this proceeding. While the referee recommended that Attorney Harvey be ordered to make restitution to the Morphy estate in the full amount of the judgment it had taken against him, together with interest on the amount of his conversions from the date of each of them, the judgment itself should furnish adequate assurance that the estate will be made whole. In any event, should Attorney Harvey ever seek to have his license to practice law in Wisconsin reinstated, he will be required to show that he has made full restitution to the estate. SCR 22.28(4)(k).[3] We reject Attorney Harvey's position that in the matter

---

[3] SCR 22.28 provides, in pertinent part:

**Reinstatement.**

. . .

(4)   The petition for reinstatement shall show that:

. . .

(k)   The petitioner has made restitution or settled all claims from persons injured or harmed by petitioner's misconduct or, if the restitution is not complete, petitioner's explanation of the failure or inability to do so.

of restitution he should be given "credit" for the $25,000 specific bequest in Ms. Morphy's will to which he waived entitlement in the settlement of the civil litigation. That is a matter for the probate court to determine.

Further, in respect to the recommendation that Attorney Harvey be required to reimburse the estate for the gift tax paid, there is no evidence in the record that in fact the estate paid a gift tax for the transfers Attorney Harvey reported as gifts. If the estate made such a payment and did not obtain a refund following Attorney Harvey's settlement of the civil action brought against him by the estate, that matter may be addressed in the event he seeks reinstatement of his license.

Lastly, we address the objection Attorney Harvey made to several items of costs asserted to have been incurred by the Board in this proceeding. In its response to that objection, the Board acknowledged that a $12 charge for its counsel's telephone conference with an attorney attempting to locate Attorney Harvey and a $20 witness fee paid to a medical records clerk whose testimony at the disciplinary hearing proved unnecessary were not properly included in the costs and asked that they be withdrawn. In all other respects, Attorney Harvey's objection is denied.

IT IS ORDERED that the license of Walter L. Harvey to practice law in Wisconsin is revoked, effective the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order Walter L. Harvey pay to the Board of Attorneys Professional Responsibility the costs of this proceeding.

IT IS FURTHER ORDERED that Walter L. Harvey comply with the provisions of SCR 22.26 concerning the

140

duties of a person whose license to practice law in Wisconsin has been revoked.

SHIRLEY S. ABRAHAMSON, J., did not participate.